UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRADLEY L.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-00323-JMS-TAB |
| ) | |
| ANDREW M. SAUL, Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Bradley L. applied for disability insurance benefits from the Social Security Administration ("SSA") on October 18, 2016, alleging an onset date of December 15, 2015. [Filing No. 6-2 at 15.] His application was initially denied on December 14, 2016, [Filing No. 6-4 at 6], and upon reconsideration on May 16, 2017, [Filing No. 6-4 at 16]. Administrative Law Judge Tammy H. Whitaker (the "ALJ") held a hearing on October 26, 2018. [Filing No. 6-2 at 36-61.] The ALJ issued a decision on January 10, 2019, concluding that Bradley L. was not entitled to receive disability insurance benefits. [Filing No. 6-2 at 12.] The Appeals Council denied review on November 26, 2019. [Filing No. 6-2 at 2.] On January 29, 2020, Bradley L. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id*. (citation omitted).

## II.
### BACKGROUND

Bradley L. was 45 years of age at the time he alleged that his disability began. [Filing No. 6-5 at 2.] He has completed high school. [Filing No. 6-2 at 39.] He previously worked as a tool-and-die supervisor. [Filing No. 6-6 at 5.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Bradley L. was not disabled. [Filing No. 6-2 at 29.] Specifically, the ALJ found as follows:

- At Step One, Bradley L. had not engaged in substantial gainful activity[3] since December 15, 2015, the alleged onset date. [Filing No. 6-2 at 17.]

- At Step Two, he had "the following severe impairments: degenerative disc disease spondylosis and stenosis of the lumbar spine with radiculopathy, spondylosis of the cervical spine, degenerative disc disease of the thoracic spine, osteoarthritis of the left knee, and osteoarthritis of the right knee status post right knee ACL reconstruction." [Filing No. 6-2 at 18 (citation omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 6-2 at 20.]

- After Step Three but before Step Four, Bradley L. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except lift, push, pull, and carry twenty pounds occasionally and ten pounds frequently; sit six hours of an eight-hour workday; stand and walk, in combination, two hours of an eight-hour workday; no foot control operation; and the claimant is limited to work that allows for the individual to stand or walk for at least five minutes of each hour provided that the individual remains on task when standing or walking. In addition, never climbing ladders, ropes, stairs, or scaffolds; occasionally balance, stoop, and climb ramps; never kneeling, crouching, or crawling; and occasional overhead reaching. No exposure to extreme cold, unprotected heights or dangerous moving machinery. Limited to simple, routine, tangible, and repetitive work. The claimant is limited

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

> to work that allows the individual to be off task ten percent of the workday in addition to regularly scheduled breaks." [Filing No. 6-2 at 21.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Bradley L.'s RFC, he was incapable of performing his past relevant work as a tool-and-die supervisor. [Filing No. 6-2 at 26-27.]

- At Step Five, relying on the VE's testimony and considering Bradley L.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision in representative occupations such as a document preparer, final assembler, and weight tester. [Filing No. 6-2 at 27-28.]

### III.
### DISCUSSION

Bradley L. makes two assertions of error, arguing that the ALJ: (1) provided only a perfunctory explanation of her conclusion at Step Three that Bradley L. did not meet or medically equal Listing 1.04(A) and did not submit threshold imaging for expert review to make that determination, and (2) did not properly weigh the supportive treating source opinions. The Court will consider the arguments in turn.

**A. Listing 1.04(A)**

Bradley L. argues that the ALJ's "glib" analysis at Step Three concerning Listing 1.04 did not address the specific criteria of Listing 1.04(A), because, in part, the ALJ conclusively asserted that the evidence did not support an inability to ambulate effectively that is not required by that alternative criteria. [Filing No. 8 at 21.] Bradley L. asserts that the record established each of the requirements of Listing 1.04(A) and the ALJ's summary of the evidence at the later steps demonstrated as much without acknowledging it. [Filing No. 8 at 21-23.] Bradley L. argues that the Court should order the SSA to make a finding that the listing was met. [Filing No. 8 at 23.] Alternatively, Bradley L. contends that the Court should remand for further evaluation of whether the listing was met or equaled. [Filing No. 8 at 23.] He also contends that the ALJ was unable to

5

rely on the consultants' implied assessment of medical equivalence because the ALJ acknowledged that those opinions were deserving of only little weight.  [Filing No. 8 at 24-25.]

The Commissioner contends that the ALJ "sufficiently articulated and supported her analyses" by mentioning Listing 1.04 and summarizing the relevant diagnostic imaging and clinical findings when analyzing Bradley L.'s RFC.  [Filing No. 9 at 11-12.]  The Commissioner argues that Bradley L. failed to carry his burden at Step Three to establish each of the requirements of the listing.  [Filing No. 9 at 12-13.]  The Commissioner contends that there is no authority for the proposition that the claimant's burden can be carried by showing that the evidence established "some" of the required clinical findings spread throughout the record.  [Filing No. 9 at 13.]  The Commissioner argues that by admitting that the ALJ considered the relevant evidence, Bradley L. is asking the Court to reweigh the evidence, which it cannot do.  [Filing No. 9 at 13.]  The Commissioner also contends that decisional authority and regulatory guidance allows the presumption that the reviewing consultants have considered and rejected medical equivalence. [Filing No. 9 at 13-15.]

In reply, Bradley L. argues that there is no authority for the propositions that all the listing requirements be demonstrated in the same clinical examination or that the requirements be shown with any specific frequency in the record.  [Filing No. 12 at 1-2.]

To meet an impairment identified in the listings, a claimant must establish, with objective medical evidence, the precise criteria specified in the listing.  *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at Step Three).  Alternatively, a claimant can establish "medical equivalence" in the absence of one or more of the findings if he has other findings related to the impairment or has a combination of

impairments that "are at least of equal medical significance." *See* 20 C.F.R. § 404.1526(a)-(b). In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2003). For example, in *Minnick v. Colvin,* 775 F.3d 929, 935-36 (7th Cir. 2015), the Seventh Circuit found that the ALJ's perfunctory analysis warranted remand when it was coupled with significant evidence of record that arguably supported the listing. *See Kastner v. Astrue*, 697 F.3d 642, 647-48 (7th Cir. 2012) (remanding where the ALJ's cursory listing analysis failed to articulate a rationale for denying benefits when the record supported finding in the claimant's favor). To demonstrate that an ALJ's listing conclusion was not supported by substantial evidence, the claimant must identify evidence of record that indicates the claimant met or medically equaled the listing and must show that the ALJ misstated or ignored that evidence. *See*, *e.g.*, *Sims v. Barnhart*, 309 F.3d 424, 429-30 (7th Cir. 2002).

The regulations provide examples of medical impairments that satisfy the diagnostic criteria of Listing "1.04 *Disorders of the Spine*" by causing "associated impingement on nerve roots (including the cauda equina) or [the] spinal cord," including "spinal stenosis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00(K). To establish the alternative criteria of Listing 1.04(A) specifically, the regulations require "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* at 1.04(A).

The entirety of the ALJ's explanation was as follows:

> Concerning listing 1.04, the evidence of record does not establish that the claimant's impairment has resulted in compromise of a nerve root or the spinal cord with either evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in an inability to ambulate effectively. Accordingly, the claimant's severe impairment does not meet or medically equal the severity requirement for listing 1.04.

[Filing No. 6-2 at 20-21 (footnotes omitted).] As detailed above, demonstrating an inability to ambulate effectively is not one of the requirements of Listing 1.04(A). The ALJ's analysis conflated some of requirements of the different alternative criteria of Listing 1.04 before she conclusively asserted that the evidence did not establish those requirements. Further frustrating review, the ALJ did not make any effort to apply the relevant record evidence to demonstrate the evidentiary shortcoming with any of the full alternative criteria of the listing.

On appeal, Bradley L. cites record evidence that he contends met each of the requirements of Listing 1.04(A). He asserts that an MRI established the diagnostic criteria of the listing by showing a broad-based disc protrusion that slightly indented the ventral epidural space at L5-S1 and caused moderate left foraminal narrowing. [Filing No. 8 at 21-22 (citing Filing No. 6-7 at 4-5 (imaging taken October 11, 2016)).] He also cites corresponding clinical examination findings showing reduced range of motion, decreased muscle strength in the left lower extremity, decreased sensation, decreased ankle reflexes, and positive straight leg raising tests. [*See* Filing No. 8 at 22.] Indeed, even the consultative examiner that evaluated Bradley L. at the request of the disability determination bureau found reduced range of motion in the lumbar spine, decreased muscle strength in the bilateral lower extremities, and loss of sensation in the feet. [Filing No. 6-8 at 114-15.] Near the end of the record, on September 11, 2018, Bradley L. was evaluated by a specialist who reviewed the 2016 imaging and performed a neurological examination that revealed decreased sensation in the thighs, calves, and feet, reduced range of motion in the lumbar spine, significant difficulty with gait and station maneuvers including a "very antalgic appearing gait," and positive

8

findings with etiology-specific testing including a straight leg raising test with the left lower extremity. [Filing No. 6-11 at 9-11.] The specialist's impression was that "this is a patient with known degenerative spine and disc disease with current clinical features clearly suggestive of left-sided sciatica during [an] acute flareup now, [and] I cannot fully exclude elements of radiculopathy and even peripheral neuropathy." [Filing No. 6-11 at 11.] Such evidence arguably met each of the listing requirements.

The Commissioner's response is vague, asserting that Bradley L. did not meet his burden of proof. The burden at Step Three is to produce evidence, not persuade the factfinder. *See Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). Such is the case with, at least, all objective considerations. Otherwise, judicial review would be virtually unnecessary. The Commissioner has not identified which of the listing requirements were not established by the record evidence. To the extent the Commissioner suggests that clinical findings spread throughout the record cannot be pieced together to collectively meet a listing, the rationale is, at a minimum, absent from the ALJ's decision. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). Accordingly, Bradley L. has established error.

Concerning the appropriate disposition in this case, the Court declines to remand with instructions to award benefits based on the finding that Listing 1.04(A) was met. As noted in the standard of review section, such a disposition is appropriate only when the evidence can support but one conclusion. There are inconsistencies.

First, it is not completely clear that the diagnostic imaging established nerve impingement. As noted above, there was foraminal stenosis with some indentation of the epidural space. Also noted above, the ALJ explicitly identified lumbar stenosis with radiculopathy as a severe,

medically determinable impairment. However, a specialist that reviewed the diagnostic imaging from 2016—that was identified by Bradley L.—did not find any need for surgical intervention. [Filing No. 6-7 at 77.] There is no reference to impingement of any specific nerve root or central canal stenosis. A recent EMG/nerve conduction study performed to evaluate radiculopathy was normal. [Filing No. 6-11 at 25-26.] However, Bradley L.'s treating providers struggled to get insurance authorization for a needed MRI update. [*See* Filing No. 6-11 at 12.]

The clinical findings also varied. For instance, the consultative examiner did not find a positive straight leg raising test. [Filing No. 6-8 at 113.] The latest specialist evaluation did not find any indication of decreased muscle strength. [Filing No. 6-11 at 11.] While straight leg raising tests had often been positive, particularly on the left, it is not apparent that tests were performed both sitting and supine, as is required by the listing. [*See* Filing No. 6-8 at 99; Filing No. 6-9 at 17; Filing No. 6-11 at 11.] Accordingly, the Court returns the case to the SSA for further consideration of Listing 1.04(A). Any written evaluation of the listings should be detailed enough to allow meaningful review of the material findings.

Furthermore, the contentious call—as to whether Listing 1.04(A) was met—bolsters Bradley L.'s related argument that further evaluation of medical equivalence is warranted. The Seventh Circuit has held that the completion of disability transmittal forms and the assessment of an RFC presumptively establishes that a designated expert has determined that no listing was met or equaled; the expert determination further provides substantial evidentiary support for the ALJ's corresponding determination. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citing *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990); *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989)). However, the Seventh Circuit has also held that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have

10

changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit a new MRI to medical scrutiny)).

Here, the most recent reviewing consultant assessment considered the 2016 MRI evidence of lumbar etiology for Bradley L.'s pain, as well as his past history of ACL reconstruction of the right knee and ongoing pain there, before concluding that with the "combination of above problems, [he] would not be able to sustain greater than sed[entary] duties." [Filing No. 6-3 at 14-18.] The ALJ gave that assessment "little weight," reasoning that additional limitations were warranted based on, in part, "supporting objective imaging demonstrating his osteoarthritis . . . ." [Filing No. 6-2 at 25.] The updated imaging of Bradley L.'s knee—that was not submitted to expert scrutiny—led to his treating provider's assessment that Bradley L. would need a total knee replacement. [Filing No. 6-10 at 42.] Further consideration of Listing 1.04(A), as well as the possibility of medical equivalence based on the complete record, is needed on remand.

**B. Treating Opinions**

Bradley L. argues that the ALJ provided only a perfunctory and illogical rationale for rejecting the disabling opinions of two treating sources who assessed that Bradley L. would miss more than one day of work per month. [Filing No. 8 at 25.] He also argues that the ALJ did not provide more than an arbitrary explanation for crediting one of those source's opinions that Bradley L. would be off task ten percent of the workday over the other's opinion that he would be off task 25 percent of the workday. [Filing No. 8 at 25.] He contends that the ALJ should have given the disabling opinions controlling weight or at least provided good reasons for their rejection by

utilizing the regulatory factors to explain the weight they were given. [Filing No. 8 at 25-26.] Bradley L. contends further that the ALJ did not explain her relevant findings by addressing significant evidence of record and/or by providing a logical bridge from the relevant evidence to her conclusions. [Filing No. 8 at 26-27.]

The Commissioner argues that the ALJ's relevant discussion of the opinion evidence acknowledged the regulatory characteristics of the treating sources. [Filing No. 9 at 16.] The Commissioner contends that the ALJ's conclusion that the assessed limitations concerning absences were speculative was reasonable because the treating sources filled out a questionnaire without supporting their designations. [Filing No. 9 at 16.] The Commissioner also argues that the ALJ met her obligation to minimally articulate her relevant findings and she did not need to explicitly consider each of the regulatory factors. [Filing No. 9 at 17-18.]

In reply, Bradley L. argues that the ALJ's decision did not provide any reason to distinguish the disabling off task limitation assessed by Bradley L.'s primary care physician from the non-disabling, corresponding limitation of the other treating source because both were estimates of the effects of Bradley L.'s pain. [Filing No. 12 at 4.] He also argues that the ALJ ignored that his primary care physician treated him more frequently and over a longer period than the other source. [Filing No. 12 at 4.]

Based on the filing date of Bradley L.'s application, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies to claims filed before March 27, 2017). In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011);

*Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott*, 647 F.3d at 739 (citing *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). "And even if there had been sound reasons for refusing to give [a treating physician's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Scott*, 647 F.3d at 740 (citing *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F.3d at 740 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *see* 20 C.F.R. § 404.1527(c). However, so long as the ALJ "minimally articulates" her reasoning for discounting a treating source opinion, the Court must uphold the determination. *See Elder v. Astrue,* 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527).

Having found that remand is necessary based on the assignment of error detailed above, the Court declines to provide an exhaustive analysis of the ALJ's treatment of the opinion evidence. Like the issue addressed above, at a minimum, the ALJ's decision could – and perhaps should— have provided further elaboration of her material findings.

For instance, two of Bradley L.'s treating sources, his primary care physician, Lori Deemer, M.D., and his orthopedist, Lindsey Rolston, M.D., assessed that Bradley L. would be likely to miss more than one day of work per month. [Filing No. 6-9 at 30 (Dr. Deemer on August 3, 2018, "More than four days per month"); Filing No. 6-9 at 37 (Dr. Rolston on August 22, 2018, "About

13

three day per month").] The VE's testimony established that both limitations would preclude work in the competitive economy. [Filing No. 6-2 at 58.]

The ALJ explained that the "estimate of absences described in Dr. R[o]lston's opinion is speculative in nature and given no weight." [Filing No. 6-2 at 26.] She also explained that Dr. Rolston's opinion was given "partial weight," in part, because it was "inconsistent with the medical source statement from the claimant's primary care physician, who has also treated him consistently for back and knee pain." [Filing No. 6-2 at 25-26 (citations omitted).] Indeed, Dr. Rolston indicated that her assessment was based on her specialized treatment of Bradley L. for "advanced osteoarthritis of [his] knees." [Filing No. 6-9 at 36.] Dr. Deemer indicated that her assessment was based on a wider range of general treatment—including referrals to specialists such as Dr. Rolston—for "degenerative disc disease of [the] spine" and "severe [osteoarthritis of the] knees." [Filing No. 6-9 at 28.] The ALJ largely adopted Dr. Rolston's assessment that Bradley L. could perform a range of sedentary work, except that the ALJ added more restrictive environmental limitations to her RFC finding that were consistent with Dr. Deemer's assessment. [*See* Filing No. 6-9 at 30, *compared with*, Filing No. 6-9 at 37.]

However, the ALJ did not address the fact that both treating opinions assessed fairly consistent, disabling absence limitations. Furthermore, they were the only medical opinions to address absences from work. See *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012) (cannot infer that the reviewing consultants considered and rejected a type of limitation that was not addressed by their opinions).

In *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017), the Seventh Circuit held that the ALJ had not built "an accurate and logical bridge" from the evidence—"especially given [the claimant's] unrebutted testimony that he was taking unscheduled breaks (sometimes for 20

14

minutes) three to five times during his five-hour shifts"—to the ALJ's RFC conclusion that the claimant would be off task for only ten percent of the workday. Here, Bradley L.'s testimony repeatedly addressed having bad days because of his pain that greatly affected his exertional capacities. [*See, e.g.*, [Filing No. 6-2 at 42-43](#).] He testified that on certain days he could not stand up to even dress himself. [[Filing No. 6-2 at 46-47](#).] When asked what triggered his bad days, he responded, "You never know what's going to trigger it. You know, I could be washing my hands, or sitting down on a toilet, or coughing, or just turning to walk a different direction and have my back go out." [[Filing No. 6-2 at 49](#).]

      The ALJ generally discredited Bradley L.'s subjective statements concerning his symptoms. As noted in the standard of review section, the ALJ's credibility determination is entitled to considerable deference. In reaching that determination here, the ALJ explained that Bradley L.'s activities of daily living were "considered as persuasive evidence." [[Filing No. 6-2 at 24](#).] To a certain degree, the Court can see how Bradley L. reporting to his treating provider that he was able to go fishing would support reasonable inferences about his exertional capacity to do such an activity that might be consistent with sedentary work. [*See* [Filing No. 6-2 at 24](#).] However, the activities cited by the ALJ say little about Bradley L.'s ability to sustain those activities on a consistent basis. Bradley L.'s testimony qualified the activities that he was capable of performing based on his relative level of pain on good versus bad days.

      More to the point here, Bradley L.'s treating providers assessed specific limitations about his capacity to sustain work. The ALJ merely stated that Dr. Rolston's relevant assessment was speculative and did not give any reason for discrediting Dr. Deemer's corresponding assessment. When it comes to statements made by acceptable medical sources, the presumption is that a treating assessment is entitled to deference unless it conflicts with, at least, substantial evidence.

15

Otherwise, the treating assessment may be deserving of even controlling weight. In this case, further consideration is necessary on remand. Again, any written determination must be specific enough about the conflicting evidence to allow meaningful review.

Similarly, the ALJ's decision is vague as to what supported her conclusion that Dr. Rolston's opinion that Bradley L. would be off task ten percent of the workday was more consistent with the record than Dr. Deemer's opinion that he would be off task 25 percent of the workday. [*See* Filing No. 6-2 at 25-26.]

Furthermore, the ALJ's description of Dr. Deemer's opinion was inaccurate in one *potentially* significant respect. The ALJ explained that:

> In general, the opinion from the primary care physician is consistent with the assigned residual functional capacity in noting the claimant is capable of performing a range of sedentary work, allowing for standing and walking at least five minutes each hour as described above and off task time to account for knee and back symptoms . . . .

[Filing No. 6-2 at 26.] As detailed above, the ALJ's RFC finding included the relevant limitation that Bradley L. would need to be able to stand and walk around for five minutes every hour. However, Dr. Deemer's assessment was that Bradley L. would need to do so for five minutes every 30 minutes. [Filing No. 6-9 at 28.] In other words, Dr. Deemer assessed that Bradley L. would need to stand and walk for ten minutes of every hour or twice as much as the ALJ found. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *7. It is not apparent here that the ALJ was aware of the discrepancy based on her explanation that her RFC finding was consistent with the relevant aspect of Dr. Deemer's opinion.

The VE's testimony addressed the potential significance of such a limitation but did not specifically address Dr. Deemer's precise assessment. The VE testified that the need to stand and

16

walk for 15 minutes every hour when combined with the capacity to stand and walk only two hours of an eight-hour workday eliminated all unskilled work, including at the sedentary exertional level. [Filing No. 6-2 at 56-57.]  However, the VE testified that only five minutes every hour would allow performance of the sedentary occupations relied upon by the ALJ in the Step Five denial. [Filing No. 6-2 at 57-58.]  The record is silent as to the effect of Dr. Deemer's actual assessment. Accordingly, further consideration of the opinion evidence is needed on remand.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Bradley L. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above.  Final Judgment will issue accordingly.

Date: 10/1/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel